CALHOUN v. BANK OF GREENWOOD.

1. DEBTOR AND CREDITOR—COLLATERALS—ASSIGNMENTS.—Collaterals deposited by a debtor with his creditor and received back in trust for collection, are still the property of the creditor, and the proceeds when collected belong to the creditor; but having been collected and the proceeds misappropriated, and the debtor having afterwards made a general assignment

for the benefit of all his creditors, the creditor, who was entitled to these collaterals, is not entitled to a preferred payment of his claim out of moneys realized by the assignee on other assets. Such payment having been made by the assignee, it was properly decreed to be refunded.

2. CASE CRITICISED.—This case distinguished from National Bank *v.* Jennings, 38 S. C., 372.

3. PARTNERSHIPS—SOLE MEMBER.—The rights of partners and partnership creditors as to partnership debts, stated, but these principles have no application where there is a partnership in name while none in fact. And, therefore, where the same individual conducted a mercantile business in one place under a firm name and another mercantile business at another place under a different firm name, and made an assignment of both for the benefit of his creditors, the assignee of one does not have the rights of a partnership creditor against the other as to a claim due to the one on the books of the other.

4. IBID.—IBID.—NEW PARTNER.—When another party was taken into one of these firms as a partner, and this new firm assumed all the liabilities of that business, it did not thereby assume the liabilities due by the sole owner to himself in his old business; and a debt due by this old business to a stranger, and paid out of the then sole owner's personal assets assigned, was not a proper claim against this partnership, for the reason that such personal assets had been pledged for this payment long before the assignment was made.

Before WALLACE, J., Abbeville, October, 1893.

This was an action by A. D. Calhoun, as assignee and agent of Jervey & Co., against the Bank of Greenwood and Wm. B. Ravenel, assignee, commenced December 16, 1892. The special master's statement of the facts in his report was as follows:

The questions involved in the case, as we have said, grow out of the mutual dealings of two mercantile firms, having common partners, to wit: William C. Bee & Co., factors and commission merchants, of Charleston, S. C., and Jervey & Co., "dealers in general merchandise and farm supplies, and buyers of cotton," of Greenwood, S. C. The firm of William C. Bee & Co., prior to January, 1887, consisted of Theodore D. Jervey, E. P. Jervey, and Lewis S. Jervey. At that date, Theodore D. Jervey retired from the firm, and the business was continued by the other two partners, until January, 1890, when E. P. Jervey retired, with a large indebtedness to the firm. From

January, 1890, until 2d January, 1892, Lewis S. Jervey was the sole member of the firm of William C. Bee & Co., and at the latter date made an assignment, in his individual capacity and as a member of the firm, of all his property owned by him in this two-fold capacity, to William B. Ravenel, as assignee; and at a meeting of creditors, subsequently held, was appointed as their agent.

Prior to this time, however, and whilst E. P. Jervey and Lewis S. Jervey composed the firm of William C. Bee & Co., to wit: on the 15th of September, 1887, they advanced each $1,000 to establish a mercantile and cotton business at Greenwood, S. C.; and this copartnership continued until the retirement of E. P. Jervey from the firm of William C. Bee & Co., when he also retired from the firm of Jervey & Co. From January, 1890, to September, 1891, Lewis S. Jervey was the sole member of the two firms of Wm. C. Bee & Co. and Jervey & Co. At the latter date, he associated with himself in the business of Jervey & Co., R. S. Sparkman, he advancing $2,000 to the capital stock of the new firm, being two-thirds of the same; Sparkman advancing $1,000, being the other one-third. This one-third, according to the testimony of Sparkman, was placed to his credit on the books of the firm, but was only partly paid. By the agreement between them, which was a verbal one, Sparkman was to receive one-third of the profits of the concern, and in any event was guaranteed $75 per month, as his share, and was to assume his share of the liabilities of the old firm.

Sparkman had been the active manager of the business of Jervey & Co. from the establishment of the firm in 1887, conducting its mercantile business, borrowing money, buying, selling, and shipping cotton for the firm; and according to the testimony of both Jervey and Sparkman, the business of the new firm was to continue as before. According to the testimony of Jervey, there was no contract for the shipment of cotton to William C. Bee & Co., but there were large advances of money to the Greenwood firm in 1890 and 1891, up to September, 1891, which was covered by drafts and shipments of cotton. As far as possible, Jervey then believed the Green-

wood firm to be solvent, as he made advances to it. In its be-
half $4,500 had been raised on the Hottinger note, drawn by
Jervey & Co., endorsed by William C. Bee & Co., and secured
by an assignment to Hottinger, of a mortgage of E. P. Jervey,
given to the Charleston firm, and held by it as collateral, to
secure a debt of E. P. Jervey to the firm. In the meantime,
during the continuance of the old firm of Jervey & Co., and
also after the entrance of Sparkman, large sums were borrowed
from the Bank of Greenwood, on mercantile and cotton ac-
counts, the former secured to the bank by liens and chattel
mortgages, and the rest paid in part by cotton drafts. Cotton
was shipped to New York, Boston, Norfolk, and other points;
and with a fall in prices, heavy losses were sustained by Jervey
& Co., and following the example of the Charleston firm, it
also made an assignment ten days after the other assignment,
to wit: on the 22d of January, 1892. A. D. Calhoun was
made the assignee, and afterwards appointed as the agent of
the creditors, and now seeks the aid of this court to decree be-
tween the conflicting claims preferred by Ravenel, the assignee
of William C. Bee & Co., and the Bank of Greenwood, upon
the assigned estate.

From the Circuit decree in this case both of the defendants
appealed.

*Messrs. Parker & McGowan,* for plaintiff and Ravenel.

*Mr. M. P. DeBruhl,* for Bank of Greenwood.

October 5, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiff, A. D. Calhoun, as assignee
and agent of creditors of a firm, known as Jervey & Co., com-
posed of Lewis S. Jervey and R. S. Sparkman, merchants at
Greenwood, in Abbeville County, in this State, under an as-
signment made by such firm for the benefit of their creditors
under the laws of this State, exhibited his complaint in the
Court of Common Pleas for Abbeville County, in December,
1892, wherein he made the Bank of Greenwood and William
B. Ravenel, as assignee, &c., of William C. Bee & Co., parties

defendant; and in his complaint the said plaintiff, being on the equity side of the said Court of Common Pleas, sought a decree whereby his duty as such assignee and agent of creditors of Jervey & Co., so far as the conflicting claims of the two defendants named above might be determined. As in the report of the case there will appear so much of the report of William A. Lee, Esq., as special master herein, as covers a detailed statement of the facts leading up to and setting forth the history of the contention here, we will not reproduce the same.

The cause came on to be heard by his honor, Judge Wallace, at the October Term, 1893, of the Court of Common Pleas for Abbeville County upon exceptions to the report of the special master, Mr. Lee; and after a consideration thereof, the said Circuit Judge filed his decree, wherein he sustained that exception to the report which alleged error in that conclusion of law of the special master by which he sustained the payment by the plaintiff, as assignee and agent, of the sum of $1,431.35 to the defendant, the Bank of Greenwood, from the assets of said assigned estate; but he overruled that exception of the defendant, William B. Ravenel, as assignee and agent of the creditors of the assigned estate of William C. Bee & Co., to said report, because the special master, Mr. Lee, refused to recognize the claim of such assignee and agent of the assigned estate of William C. Bee & Co. to have the sum of $8,688.65, and interest thereon from 31st July, 1891, as a legal claim upon the assigned estate of Jervey & Co. The Bank of Greenwood now appeals from said decree, alleging error therein touching the Circuit Judge's conclusion in regard to the sum of $1,421.35, and, on the other hand, William B. Ravenel, as assignee and agent of William C. Bee & Co., assails said decree touching the Circuit Judge's conclusion as to his alleged claim of $8,688.65 and interest thereon.

We will first consider the appeal of the Bank of Greenwood. Briefly, these are the facts: Jervey & Co., in the course of their business as merchants, borrowed money from the Bank of Greenwood, pledging to the bank as collateral security certain notes, mortgages, agricultural liens, &c., received by them from their customers. In the early fall of 1891, the bank deposited

these collaterals with Jervey & Co., in trust for their collection as the property of the bank. During the year 1891, the firm of Jervey & Co. collected $1,421.35 from these collaterals, but neglected to turn this sum, or any part thereof, over to the bank. Really, the firm paid out this sum in the course of their business to other parties. When the firm of Jervey & Co. made their assignment for the benefit of their creditors on the 12th January, 1892, they only had in cash the sum of $10.68. The assignee and agent, Mr. Calhoun, paid from the moneys belonging to the assigned estate of Jervey & Co. to the Bank of Greenwood the sum of $1,421.35, under what he conceived the advice of counsel, but in which opinion it is clearly established he made an honest mistake.

The judge decides that the Bank of Greenwood must pay back this sum to the assignee and agent, the plaintiff. The Bank of Greenwood alleges that this was error: 1. Because such assignee and agent knew all the facts of the transactions when he paid this money. 2. Because the notes, mortgages, and other securities upon which the said sum of $1,421.35 was collected had been assigned by Jervey & Co. to the Bank of Greenwood to secure a debt, and the bank had by such assignment acquired a specific property in said securities, which was not lost by their being redelivered to Jervey & Co. for collection, the debt being still unpaid, and the money collected upon them is the specific property of the bank. 3. Because such money ($1,421.35) was voluntarily paid to the bank by the plaintiff, and was not made under a mistake of fact, such plaintiff well knowing all the facts connected with the transactions of Jervey & Co. with the bank in relation to these collaterals.

We do not think the Circuit Judge erred. There can be no doubt but that if Jervey & Co. had not collected this sum of $1,421.36, and paid it away before their assignment on the 12th January, 1892, the owner of these collaterals, the Bank of Greenwood, would have been entitled to such collaterals while in the hands of such firm; for this firm, Jervey & Co., could only convey by their deed of assignment their own property. Or if the plaintiff, Calhoun, had found those collaterals uncollected when he took charge of the assigned estate,

and he had collected the $1,421.35 on such collaterals, then this sum would have belonged to the bank, and would have properly been payable to them by the plaintiff as assignee. But the truth is, not one dollar of the money in the hands of the plaintiff as belonging to the assigned estate has been derived from these collaterals, nor a dollar of the $1,421.35 paid by the plaintiff to the Bank of Greenwood was derived from collection by such assignee of said collaterals.

Reference is made by the appellant to the case of *The National Bank of Greenville* v. *Jennings*, 38 S. C., 372; but an examination of this reported case will disclose that its facts and those of the case at bar are very dissimilar. The firm of which the defendant, Jennings, was a partner, to secure their indebtedness to the National Bank of Greenville, had assigned to that bank certain choses to secure such firm indebtedness. The Bank of Greenville, upon an agreement that such firm would collect these collaterals and pay such collections to the bank, turned these collaterals over to Jennings' firm. Jennings and his partners collected these collaterals and diverted the proceeds when collected to their own use. This court held that such conduct was a fraud, for which the partners could be arrested. There were in that case no assigned assets in question. Indeed, the rights of third parties were in no wise involved in that case; the fight was between the bank on the one side and Jennings and his partners on the other. In the case at bar, no one gainsays the proposition, that Jervey & Co. committed a breach of trust when they collected and used for their own purposes money which, when collected on choses placed in their hands in trust by the Bank of Greenwood, was held by them in trust for that bank. All that is contended for here is, that such Bank of Greenwood, because of such breach of trust, have no lien to the exclusion of the other creditors of the firm of Jervey & Co. upon that firm's assigned estate, of which the said collaterals form no part.

We will next consider the appeal presented by William B. Ravenel, as assignee of William C. Bee & Co. Without being tedious, we may state the facts of this contention thus: In July, 1891, Lewis S. Jervey owned and operated two

mercantile houses, the one located in Charleston, where he did a cotton factorage and rice factorage business, and was so conducted by him, calling himself Wm. C. Bee & Co., the other located in Greenwood, S. C., where he conducted a general merchandise business, wherein he included the purchase of cotton, and was so conducted by him, calling himself Jervey & Co. It seems that Lewis S. Jervey, as Wm. C. Bee & Co., made advances to himself as Jervey & Co. These transactions were entered upon the books of Jervey as Wm. C. Bee & Co. as transactions with Jervey & Co., and, in their turn, such transactions were entered upon the books of Jervey & Co. at Greenwood, S. C., as transactions with Wm. C. Bee & Co., of Charleston, S. C. On the 31st July, 1891, by the books of Wm. C. Bee & Co., Jervey & Co. at Greenwood owed the sum of $8,688.65 to said Lewis S. Jervey, styling himself Wm. C. Bee & Co. Included in this last amount was the sum of $4,500, borrowed by Lewis S. Jervey as Jervey & Co. on a note signed by himself as Jervey & Co. and endorsed by himself as Wm. C. Bee & Co. from one C. Fritz Hottinger, which note the said Lewis S. Jervey secured by an assignment to Hottinger of a mortgage he held, while styling himself Wm. C. Bee & Co., on one Eugene P. Jervey.

On the 1st September, 1891, the said Lewis S. Jervey and R. S. Sparkman entered into a mercantile partnership, under the firm name of Jervey & Co., it being the same mercantile business he, Lewis S. Jervey, had carried on at Greenwood, S. C., in the name of Jervey & Co. By the partnership agreement of Lewis S. Jervey and R. S. Sparkman, the latter was to contribute $1,000 in cash, and become an owner to the extent of one-third of the assets of the business at Greenwood, and to assume his share of the liabilities of the mercantile venture of Lewis S. Jervey, styling himself Jervey & Co., at Greenwood, S. C. The public was advertised of this partnership between Lewis S. Jervey and R. S. Sparkman. The said R. S. Sparkman admits that he knew of all of the liabilities he thus assumed. We might add that the said R. S. Sparkman was the manager of the business of Lewis S. Jervey at Greenwood, which was there conducted by the said Lewis S. Jervey, styling himself Jervey & Co.

Lewis S. Jervey, as Wm. C. Bee & Co., made an assignment of his estate, including therein his two-third interest in the firm of Jervey & Co., at Greenwood, for the benefit of his creditors, on the 2d day of January, 1892, to Wm. B. Ravenel, as his assignee. On the 12th day of January, 1892, the firm of Jervey & Co., at Greenwood, made an assignment to A. D. Calhoun, as assignee, for the benefit of their creditors, in accordance with laws of this State. Amongst the claims presented to the said A. D. Calhoun, as assignee of Jervey & Co., was that of Wm. B. Ravenel, as assignee of Lewis S. Jervey, styling himself Wm. C. Bee & Co., for $8,688.65, including therein what was known as the Hottinger debt for $4,500, which latter had been paid after the 2d January, 1892, from the proceeds of a mortgage on the property of Eugene P. Jervey which had been assigned in 1890 to said Hottinger by Lewis S. Jervey, styling himself Wm. C. Bee & Co., to secure said debt of $4,500. As before stated, Judge Wallace disallowed this claim.

Appellant's attorneys, in their efforts to overthrow this conclusion of the learned Circuit Judge, have resorted to a very ingenious process of reasoning to convince this court that the entity of the said "Wm. C. Bee & Co." was distinct from that of Lewis S. Jervey, who alone constitute such commercial venture. We cannot adopt their views. The law wisely regards substance, not shadows. As long as Lewis S. Jervey was the only member of the commercial venture wherein he was styled "Wm. C. Bee & Co.," the assets and liabilities of such concern were those of Lewis S. Jervey. It is quite true, that a man engaging in different forms of business may give fancy names to his several business ventures; but, after all, the assets and liabilities of such different business ventures are those, respectively, of the single owner thereof.

Under the repeated decisions of the court of last resort in this State, the following propositions of law may be said to be firmly established: Partnership assets are primarily liable to the payment of partnership debts. No partner has any interest in partnership assets until all the partnership debts are paid. The individual debts of a separate partner can only be paid from that partner's share of partnership assets which re-

main after the full payment of the partnership debts. Partnership creditors have the right to participate in the distribution of the assets of each individual partner along with the individual or separate creditors of the estate of each partner, due regard, however, being paid to liens thereon. Separate creditors of an individual, who, as a partner, is also indebted to partnership creditors, have an equity to compel partnership creditors to first exhaust partnership assets before participating with such individual creditors in the assets of the individual debtor. These principles may be found stated in *Hutzler Bros.* v. *Phillips*, 26 S. C., 136; *Blair* v. *Black*, 31 *Id.*, 346; and the many cases cited in the first of these cases. These propositions of law being accepted as true, we cannot see how the creditors of the assigned estate of Lewis S. Jervey, styling himself "Wm. C. Bee & Co.," can present their demand of $8,688.65 against the partnership of Jervey & Co., which firm is insolvent, to the exclusion of, or in equal right with, the creditors of said partnership of Jervey & Co.

The only part of this claim of $8,688.65 which has caused us serious concern, is the sum of $4,500 and interest, arising from the debt contracted by Lewis S. Jervey, styling himself Jervey & Co., with Hottinger. When Lewis S. Jervey and R. S. Sparkman associated themselves in business as the firm of Jervey & Co.—this was on 1st September, 1891—one of the first stipulations of said firm was that such firm would assume the payment of all the obligations of Lewis S. Jervey connected with his business as a merchant at Greenwood. This agreement when properly construed meant that all the obligations to others would be so assumed, and not what Lewis S. Jervey owed himself. At that time this debt of $4,500 was owing to Hottinger. And this claim having been paid after the assignment of Lewis S. Jervey out of his individual assets already assigned, might have presented some nice questions of law, if it had not been for the fact that its payment to Hottinger was from the proceeds of the mortgage which Lewis S. Jervey had assigned to Hottinger in 1890, when the Hottinger debt was contracted, and nearly two years before Jervey made his assignment. This being true, the assigned estate of Lewis

S. Jervey, while styling himself "Wm. C. Bee & Co.," has not been injured by the Hottinger debt being so paid. We must overrule the grounds of appeal presented by Wm. B. Ravenel, as the assignee of Lewis S. Jervey, styling himself "Wm. C. Bee & Co."

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, and the case be remanded to the Circuit Court for such further proceedings as may be necessary.